AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED
Jan 26, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

United States of America
v.
KEVIN GUZMAN and JULIAN ALCANTARA-AGUIRRE

*Defendant(s)*

Case No. 1:26-mj-00012-SAB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of Janaury 22, 2026 in the county of Fresno in the Eastern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 U.S.C. § 841(a)(1) and Title 21 U.S.C. § 846 | Conspiracy to Distribute and/or Possess with Intent to Distribute Fentanyl<br>10 years up to life; $10,000,000 fine; 5 years mandatory min to life supervised release; both fine and imprisonment; |
| Title 18 U.S.C. § 111(a), (b) | Assault on a Federal Officer or Employee<br>20 years prison; $250,000 fine; both fine and imprisonmnet; 3 years supervised release; $100 special assessment |

This criminal complaint is based on these facts:

See Affidavit of Special Agent Jay D. Dial Jr., attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

Jay D. Dial Jr.
*Complainant's signature*

Jay D. Dial Jr., Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Jan 23, 2026**

Stanley A. Boone
*Judge's signature*

City and state: Fresno, California

Hon. Stanley A. Boone, U.S. Magistrate Judge
*Printed name and title*

ERIC GRANT
United States Attorney
CHAN HEE CHU
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CASE NO.

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Jay D. Dial Jr., being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1. This affidavit is in support of a complaint and arrest warrants for Kevin Guzman and Julian Alcantara-Aguirre for the following offenses:

a. Kevin Guzman for Conspiracy to Distribute and/or Possess with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

b. Julian Alcantara-Aguirre for (1) Conspiracy to Distribute and/or Possess with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and (2) Assault on a Federal Officer or Employee, in violation of Title 18, United States Code, Section 111(a), (b).

## II.     AGENT'S BACKGROUND

2.     Since May 2005, I have been employed as a Special Agent with the Drug Enforcement Administration, hereinafter referred to as the "DEA."  I am currently assigned to the DEA District Office in Fresno, California.  As a Special Agent, I am an investigator or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, various federal offenses.

3.     As part of my training with the DEA, I have successfully completed a sixteen-week DEA Basic Agent Training at the DEA Academy in Quantico, Virginia.  This training included instruction in the investigation of federal drug violations, including, but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846.  I have also completed various other trainings provided by the DEA and local law enforcement agencies, including, but not limited to training on identifying characteristics associated with the manufacture, sale, and transportation of various narcotics, including, but not limited to phencyclidine (PCP), methamphetamine, heroin, cocaine, and marijuana.  This training involved the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances as well as its precursors and chemicals used in the manufacturing process.

4.     During my time as a Special Agent with the DEA, I have participated in numerous narcotics investigations either as a case agent or in a supporting role.  I have therefore conducted and been involved in numerous investigations regarding the unlawful manufacture, possession, distribution, and transportation of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§ 841(a)(1), 841(c)(2), 843, and 846 and the State of California Health and Safety Code.  As part of these investigations, I have participated in many aspects of drug investigations including, but not limited to, undercover operations, conducting physical and electronic surveillance, and arrests.  I have also debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations.  Through these investigations, I have gained

experience and knowledge with narcotics traffickers' methods of operation including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking.

5. The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

6. Because this Affidavit is being submitted for the limited purpose of securing a complaint and arrest warrants for the individuals set forth above, I have not included each and every fact known to me concerning this investigation.

## III. APPLICABLE LAW

7. Title 21, United States Code, Section 841(a)(1) states that it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

8. Title 21, United States Code, Section 846 makes unlawful for any person to attempt or conspire to commit any offense defined in the subchapter.

9. Title 18, United States Code, Section 111(a) makes it unlawful to forcibly assault, resist, oppose, impede, intimidate, or interfere with any federal officer or employee while such person is engaged in or account of the performance of their official duties.

10. Title 18, United States Code, Section 111(b) enhances the penalty for violation of Section 111(a) when, "[w]hover, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon . . . or inflicts bodily injury."

## IV. PROBABLE CAUSE

### A. Confidential Source's History and Reliability

11. The investigation in this case involved the use of a Confidential Source, hereinafter referred to as "CS." The CS is a federal defendant pending sentencing on charges of drug trafficking, who has provided information to and has assisted the DEA for judicial consideration for his pending sentence.

12. CS's criminal history is as follows: (1) juvenile convictions for carrying a loaded firearm in public, possession of a controlled substance, possession of a controlled substance for sale, use/under influence of a controlled substance in 2000; (2) juvenile conviction for carrying a loaded firearm in public in 2001; (3) conviction for possession of a controlled substance for sale in 2001; (4) conviction for sell/etc liquor to a minor in 2010; (5) conviction for possession of marijuana for sale in 2015; (6) arrest for possession of marijuana for sale in 2017; and (7) arrest for possession with intent to sell methamphetamine and conspiracy in 2022.

13. The DEA has conducted multiple controlled purchases utilizing CS and CS has proven to be reliable in all such purchases.

### B. Setting Up a Controlled Purchase with CS

14. On or about January 20, 2026, DEA agents telephonically discussed with CS about planning a controlled purchase of controlled substances. CS told agents that CS was in contact with a Mexican source by the name of Jesus, hereinafter named "**JESUS,**" by telephone number +52-669-224-2623.[1] CS stated that **JESUS** had informed him that he could provide CS kilo quantities of fentanyl pills. Specifically, **JESUS** stated to CS that he could deliver ten kilograms of fentanyl pills for $5,500 for each kilogram. CS stated that he negotiated with **JESUS** about a potential purchase, with the parties discussing purchases of fentanyl pills in the amounts from six to ten kilograms. The eventual purchase was to take place in Fresno, California.

15. On January 22, 2026, at approximately 11:40 a.m., CS placed a recorded telephone call to **JESUS** utilizing telephone number +52-669-224-2623, the same number CS

[1] The United States filed a sealed supplement to this affidavit.

had stated he had had previous discussions with **JESUS**. During the telephone call, **JESUS** indicated that the transporter of the fentanyl pills had left Los Angeles at approximately 11:30 a.m., with six kilograms of fentanyl pills.

16. Later that day, on January 22, 2026, the CS informed investigators that he and **JESUS** had agreed to have their transaction at or around 3:00 p.m., at the Denny's parking lot located at 2568 S. East Avenue, Fresno, California 93706. Based on this information, at around 2:45 p.m., investigators setup surveillance around the Denny's parking lot. Agents also equipped CS with a recording device/kel transmitter and placed CS in the Denny's parking lot.

17. At approximately 2:54 PM, CS telephoned **JESUS** who stated that his associates were approximately an hour away. **JESUS** also stated that his associates only had five kilograms of fentanyl pills and stated that he would call CS again in 40 minutes. At approximately 3:32, **JESUS** called CS and stated that his associates were approximately 25 minutes away. **JESUS** also stated that he had sent two people.

18. At approximately 3:50 PM, investigators conducting surveillance around the Denny's noticed a black 2003 Toyota Matrix bearing California license plate #4WXU532, hereinafter referred to as the "Black Matrix," at the 76 Gas Station located at 2585 S. East Avenue, Fresno, California, located across the street from the Denny's. The investigators observed an adult Hispanic male wearing a red hoodie, later identified as Kevin Guzman, hereinafter referred to as **GUZMAN**, exit the Black Matrix. **GUZMAN** walked northbound on East Avenue and then crossed East Avenue toward the Denny's. While taking on the phone, **GUZMAN** continued walking towards the Denny's main entrance. At the same time, investigators observed the Black Matrix traveling on Jensen Avenue between State Route (SR) 41 and Cedar Avenue, conducting multiple U-turns.

19. While **GUZMAN** walked towards the main entrance of Denny's, CS was on the phone with **JESUS**. Investigators heard, via the kel transmitter, **JESUS** stating that his associate was at the meet up location and wearing a red shirt. **JESUS** also stated that his associate had observed law enforcement in the area and was nervous. **JESUS** further stated that his associate

needed to see the money first and that CS needed to go to his associate, who was dressed in a red shirt. CS refused to move and instructed **JESUS** to have the associate show the drugs first. When this conversation was taking place, **GUZMAN** and CS were approximately 30 yards away from each other and both on their phones.

**C. <u>Defendants Flee and are Apprehended</u>**

20. At approximately 4:05 PM, **GUZMAN** left the Denny's parking lot, without completing the transaction, and crossed East Avenue and arrived at the 76 Gas Station. At the same time, the Black Matrix arrived at the 76 Gas Station. **GUZMAN** then entered the rear driver side of the Black Matrix. Six law enforcement officers driving three unmarked government vehicles activated their lights and sirens and attempted to contain the Black Matrix by blocking the front and rear of the vehicle. The Black Matrix evaded containment and hit two of the government vehicles which were in front of the Black Matrix. Two task force officers for the DEA were in one of these vehicles at the time. The Black Matrix then proceeded northbound on East Avenue and hit a third government vehicle. Two DEA agents were in this third vehicle at the time.

21. Investigators pursued the Black Matrix as it travelled north on East Avenue then north on Golden State Boulevard. While on Golden State Boulevard, an occupant of the Black Matrix threw a black plastic bag out the window from the rear driver side of the Black Matrix. Shortly thereafter, an occupant also threw a brown cardboard box outside the rear driver side window of the black Matrix. Investigators retrieved the black plastic bag and brown cardboard box which both contained small blue pills marked "M-30." The pills weighed approximately five kilograms in total. Field tests tested positive for fentanyl.

**Black Matrix caught on video by bystander with GUZMAN hanging outside the window of the rear driver's side**

22. Investigators continued pursuit of the Black Matrix with their lights and sirens on as the Black Matrix continued north on Golden State Boulevard and north on SR 99. While traveling on SR 99, another unmarked government vehicle, with activated lights and sirens, attempted to pull in front of the Black Matrix as it weaved through traffic. The Black Matrix made contact with that government vehicle's driver side but continued northbound on SR 99.

23. At the SR 99 and Eastbound SR 180 off ramp, the Black Matrix came to a stop in heavy traffic. The driver of the Black Matrix, later identified as Julian Alcantara-Aguirre, hereinafter referred to as **ALCANTARA-AGUIRRE**, and the rear driver side passenger, **GUZMAN**, exited the vehicle and fled east on foot up an embankment. **ALCANTARA-AGUIRRE** fled using the driver's seat while **GUZMAN** fled using the rear driver's side door. Unbeknownst to the on-scene investigators, there was a third individual who appears to have been in the vehicle who was later apprehended nearby the vehicle. Although that third individual was found nearby the vehicle running, investigators let him go shortly after detaining him because of the mistaken belief that only the driver and the individual in the rear driver's seat in the red clothing were involved in the failed transaction and also inside the vehicle.

24. **ALCANTARA-AGUIRRE** was apprehended shortly after fleeing the vehicle. **ALCANTARA-AGUIRRE** was identified as the driver of the vehicle as he fled from the

driver's seat door and because **ALCANTARA-AGUIRRE**'s phone was found in the driver's seat area.

25. Officers, however, took longer to apprehend **GUZMAN**.  While chasing **GUZMAN**, investigators saw **GUZMAN** throw a phone over the fence into the Fresno City Solid Waste Yard located at 1325 E. Dorado Street, Fresno, California.  After doing so, **GUZMAN** ran eastbound along SR 180 where a white colored Honda sedan bearing California plate #8TIC128, hereinafter referred to as the "White Honda," stopped adjacent to **GUZMAN**. **GUZMAN** entered the White Honda and the vehicle drove away in an easterly direction at a high rate of speed and out of view from law enforcement.  Investigators, however, informed California Highway Patrol of their observations and the plate number for the White Honda.

26. Investigators conducted a search of the abandoned Black Matrix and found a W-2, birth certificate, and DMV vehicle transfer/reassignment for in **GUZMAN**'s name.  Officers also found **ALCANTARA-AGUIRRE**'s California driver's license in the vehicle.  Investigators were able to therefore identify **ALCANTARA-AGUIRRE** by his name based on the driver's license.

27. At approximately 5:33 PM, California Highway Patrol informed investigators that the White Honda had been in a traffic collision near Shaw Avenue and Del Mar Avenue.  The driver of the White Honda, hereinafter referred to as "HONDA DRIVER," was being detained by California Highway Patrol in connection with the traffic collision.  Investigators, after responding to the scene, read HONDA DRIVER his Miranda Rights and HONDA DRIVER agreed to answer questions.  HONDA DRIVER stated that he had earlier picked up a Hispanic male running along the side of SR 180.  HONDA DRIVER stated that **GUZMAN** offered to pay HONDA DRIVER $10,000 to drive **GUZMAN** to Los Angeles.  After the HONDA DRIVER refused, HONDA DRIVER stated that **GUZMAN** requested to be dropped off at a train station. HONDA DRIVER, however, refused this request as well and dropped **GUZMAN** off at the SR 180's Van Ness off ramp.  HONDA DRIVER's physical description of **GUZMAN** as being about 5 foot 8 inches, with medium length hair, and glasses matched investigators' observations

from the Denny's. HONDA DRIVER also stated that **GUZMAN** had been wearing a red sweatshirt, a long-sleeved shirt underneath, and blue jeans. A search of the White Honda, however, revealed a red sweatshirt which appeared to be the same or similar to the one **GUZMAN** had been seen wearing at the Denny's.

28. After the interview with the HONDA DRIVER, investigators began surveillance of the Amtrak Train Station, located at 2650 Tulare Street, Fresno, California 93721. At approximately 6:30 PM, law enforcement observed a Hispanic male wearing baggy blue jeans, a gray colored sweatshirt, with glasses. Investigators detained the Hispanic male and confirmed with investigators who had observed **GUZMAN** at the Denny's that the detained individual was, in fact, the individual who had been wearing a red sweatshirt at Denny's and had also been observed fleeing in the Black Matrix. Investigators then transported the Hispanic male to the Fresno District Office where he self-identified as Kevin **GUZMAN**.

## V. CONCLUSION

29. Based on the facts and circumstances described in this Affidavit, there is probable cause to believe that Kevin **GUZMAN** committed the offense of Conspiracy to Distribute and/or Possess with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 and that Julian **ALCANTARA-AGUIRRE** committed both the offenses of (1) Conspiracy to Distribute and/or Possess with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and (2) Assault on a Federal Officer or Employee, in violation of Title 18, United States Code, Section 111(a), (b).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Jay D. Dial Jr.

Jay D. Dial Jr.
Special Agent
DEA

This Affidavit was submitted to me by email/pdf and attested to me as true and accurate by telephone, consistent with Fed. R. Crim. P. 4.1, and 41(d)(3) on Jan 23, 2026.

Hon. Stanley A. Boone
United States Magistrate Judge

Reviewed as to form.

*/s/ Chan Hee Chu*
CHAN HEE CHU
Assistant U.S. Attorney